State Board of Osteopathic Examiners of
Pennsylvania, Appellant, *v.* Berberian.

Argued March 11, 1963.   Before RHODES, P. J., ER-
VIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ.
(WOODSIDE, J., absent).

Rudolph A. Chillemi, Assistant Attorney General, and Morris J. Dean, Deputy Attorney General, with them Walter E. Alessandroni, Attorney General, for Commonwealth, appellant.

Laurence H. Eldredge, with him John W. Beyer, and Arnold, Bricker, Beyer and Barnes, for appellee.

OPINION BY WRIGHT, J., April 18, 1963:

The license of Dr. Harry S. Berberian to practice osteopathy and surgery was suspended by the State Board of Osteopathic Examiners under that portion of Section 14 of the Act of March 19, 1909, P. L. 46, 63 P.S. 271, as amended, which provides that the Board may suspend the right to practice osteopathy and surgery, inter alia, because of "unethical conduct" on the part of the licensee. The pertinent portion of the section appears in the footnote.[1] The court below concluded that the record did not contain substantial and legally credible evidence to justify the factual findings of the Board, and set aside its order. This appeal followed.

---

[1] "The State Board of Osteopathic Examiners may refuse, revoke or suspend the right to practice osteopathy or osteopathy and surgery in this State upon any or all of the following reasons, to wit: The conviction of a crime involving moral turpitude; habitual intemperance in the use of alcoholic beverages, narcotics, or any other substance which impairs the intellect and judgment, to such an extent as to impair the performance of professional duties; the violation of the practice of osteopathy and surgery as defined in this act; misrepresentation; unethical conduct; or misleading, fraudulent or unethical advertising, including any form of pretense which might induce citizens to become a prey to professional exploitation".

On behalf of the appellant three contentions are advanced on this appeal. It is first argued that the meaning of the term "unethical conduct" as used in the Osteopathic Act, supra, is not synonymous with the term "grossly unethical practice" as used in the Medical Practice Act of June .3, 1911, P. L. 639, as amended, 63 P.S. 401 et seq. It is argued secondly that the commission of an act involving moral turpitude may be used as evidence of unethical conduct although no conviction has been had therefor in a criminal proceeding. Finally, it is argued that the Board did have substantial and legally credible evidence to support its findings.

In limine, certain incidental matters should be noted. (1) Section 14 of the statute expressly provides that the respondent shall be furnished "with a copy of the complaint". The present action had its inception in a citation, attached to which were certain unsworn statements, some in narrative and some in question and answer form. Although appellee entered an objection to this procedure at the first hearing, the matter was not pressed in the court below. (2) The record reveals an undercurrent of considerable bitterness. The Lancaster Osteopathic Hospital was represented by counsel, and Dr. George C. Wolfe had his personal attorney in attendance. Dr. Wolfe was a defendant in *Berberian v. Lancaster Osteopathic Hospital*, 395 Pa. 257, 149 A. 2d 456, which involved a dispute concerning Dr. Berberian's staff privileges. (3) It was also developed that Dr. Berberian and his wife had been separated for some three years. Several of the Commonwealth's witnesses testified that they were friendly with the wife and sided with her against her husband. Indeed, one witness testified that Mrs. Berberian had threatened: "I made him, I will break him". (4) Appellee's able counsel has devoted a considerable portion of his brief to the constitutional argu-

ment that the term "unethical conduct" does not contain sufficiently clear and definite standards. Although this contention was not advanced in the court below, it may be raised on appeal by the appellee, as distinct from the appellant: *Sherwood v. Elgart,* 383 Pa. 110, 117 A. 2d 899. In our view of the case, however, it is unnecessary to pass upon it.

I. Finding no guide posts in the statute or its legislative history, the court below directed its attention to an interpretation of the legislative intent. Legislation of this type is penal in nature and must be strictly construed: *Schireson v. Shafer,* 354 Pa. 458, 47 A. 2d 665. We think the court below properly held that the term "unethical conduct" as used in the statute must be limited to the doctor-patient relationship. In *Pennsylvania State Board of Medical Education and Licensure v. Ferry,* 63 Dauphin County Reports 243, the court below was called upon to interpret the term "grossly unethical practice" as used in Section 12 of the Medical Practice Act of 1911. In holding that this term referred to the practice of medicine and surgery, the court below made the following pertinent statement: "The phrase 'grossly unethical practice' can only be considered as signifying those breaches of the trust, confidence and reliance, necessarily attendant upon the intimate relationship of physician and patient, which amount to gross abuses of the standards of professional conduct generally recognized as essential to the proper practice of medicine and surgery". This language was quoted with approval in our opinion affirming the decision of the court below. See *Pennsylvania State Board of Medical Education and Licensure v. Ferry;* 172 Pa. Superior Ct. 372, 94 A. 2d 121. Viewing the term "unethical conduct" in the present statutory context, we are not in accord with appellant's argument that it is more comprehensive in meaning than the term "unethical practice". To so rule

would be to hold that doctors of medicine are subject to lower statutory standards of conduct than doctors of osteopathy.

II. Section 14 of the statute expressly lists as a ground for license suspension "the conviction of a crime involving moral turpitude". Dr. Berberian had not been formally charged with, much less convicted of, such an offense. However, the Board made certain findings of fact (Nos. 3 and 4) based on the testimony of Verna P. Howe that, during the year 1955, Dr. Berberian attempted to rape her. Miss Howe, a woman some thirty-odd years of age, was not and never had been a patient of Dr. Berberian. He was not apprised of her accusation until four years later, at which time a categorical denial was entered. The court below made the following apt comment: "This was the type of a situation where one person accuses another without any corroborative evidence at all. Thus without corroborative evidence, together with the legal presumption which arises from the lapse of time as has been pointed out in the Pennsylvania State Board of Medical Education and Licensure v. Schireson, 360 Pa. 129 at 132 (1948) would certainly be more than ample to raise such a reasonable doubt that the testimony should have been regarded as insufficient to support the conclusion of the Board". Since we fully agree that the charge of attempted rape was not made out, appellant's second question becomes moot.

III. The definition of substantial and legally credible evidence was set forth in *Pennsylvania Labor Relations Board v. Kaufmann Department Stores*, 345 Pa. 398, 29 A. 2d 90, as follows: "All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence sufficient to convince a reasonable mind to a fair degree of certainty; otherwise our vaunted system of justice would rest upon nothing higher than arbi-

trary edicts of its administrators. 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' . . . 'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established' . . . 'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power' ''. This definition was quoted with approval in *Pennsylvania State Board of Medical Education and Licensure v. Schireson,* 360 Pa. 129, 61 A. 2d 343.

There is a voluminous record in this case. The adjudication of the Board covers forty-seven pages. It contains fifteen findings of fact based upon which, as previously indicated, the Board concluded that Dr. Berberian's license should be suspended solely on the ground that he was guilty of unethical conduct. In setting aside the Board's order, the court below made an exhaustive review of the record and analyzed the findings in great detail. It would unduly burden the present opinion to attempt a complete summary. Findings Nos. 3 and 4 have already been considered. We will briefly mention several other typical findings.

Finding No. 5 is to the effect that Dr. Berberian examined a surgical scar on the person of Mrs. Elizabeth Lutz in an unauthorized manner and made certain vulgar remarks. Mrs. Lutz had been a patient of Dr. Berberian for many years. Shortly before the incident in question, Dr. Berberian had referred her to another doctor for surgery. He visited her regularly during her hospitalization. Several months later she came to his office for treatment of a back pain. At that time Dr. Berberian examined the scar to determine the progress of the healing. When asked whether it was not perfectly natural for him to look at the scar, Mrs. Lutz replied "I thought so". Concerning

the language used, Mrs. Lutz testified, "He talked rough to me and I talked rough to him. There wasn't anything unusual about the language".

Findings Nos. 7 and 8 were based upon the testimony of Jacqueline Shenk. Subsequent to the hearing, Jacqueline's husband testified in a deposition that his wife had perjured herself. In a later affidavit Jacqueline admitted that she had been "frightened into making inaccurate statements by Mrs. Martha L. Berberian" and that she was "sorry for making all the untrue statements about Dr. Berberian at the hearing". Her accusations were categorically denied by Dr. Berberian, and the subsequent retraction makes them unworthy of consideration.

Finding No. 12 sets forth that Dr. Berberian, on February 16, 1958, did "lie in bed alongside a Miss Dorothy Grebinger while the latter was a patient in the Lancaster Osteopathic Hospital". The court below comments as follows: "This finding of fact we deem under the evidence to be so silly as almost to deserve no consideration". The incident occurred during one of the worst snow storms in the history of the City of Lancaster. Dr. Berberian remained on constant duty at the hospital for three days and three nights. During that period his nurse, Miss Grebinger, was a patient in the hospital. On the day in question appellee was resting on Miss Grebinger's bed. There was nothing whatever to indicate an illicit relationship. The director of nurses testified that she "knew that he was exhausted".

It is sufficient to say in conclusion that, in the light of the established definition of the term, we agree with President Judge Sohn that this record does not contain substantial and legally credible evidence to support the Board's findings. We adopt with approval the concluding paragraph of his well-considered opinion, as follows:

"In making our findings in this case our decision is based solely upon the evidence adduced of record. We find no fault whatsoever with the Board's conduct in this case but believe that it was not properly advised what the law considered 'substantial and credible evidence'. What started this proceeding we do not exactly know from the record but we do feel that the way in which the proceedings were begun and the methods through which they were carried out indicated nothing more than a witch-hunt. Somebody, we do not know who, evidently has a desire to see this fifty-year old doctor deprived of his right to practice. We hold no brief for him as a lot of his conduct was certainly indefensible. He has shown himself to be a crude and rude man lacking a certain polish and sophistication which he as a professional man should be clothed in. However, we do not feel that there has been adduced against him sufficient substantial and credible evidence to justify any of the findings of the Board or any of the conclusions of law drawn from those findings".

Order affirmed.