## State Board of Pharmacy v. White Cross Stores, Inc.

*Harry J. Rubin* of *Krekstein & Rubin,* for appellant.

*Robert S. Robbins,* Assistant Attorney General, *Charles A. Woods, Jr.,* Deputy Attorney General, and *Walter E. Alessandroni,* Attorney General, for appellee.

KREIDER, J., December 28, 1964.—This is an appeal by White Cross Stores, Inc. #9, a Pennsylvania corporation (hereinafter called "White Cross") from an adjudication of the Pennsylvania State Board of Phar-

macy (hereinafter called "Board") which denied the application of White Cross for registration and a permit to conduct a pharmacy in Pittsburgh, Pennsylvania. White Cross is a wholly owned subsidiary of A. Robinson & Company, a corporation which owns other corporations operating retail pharmacies, health and beauty aid stores in other States and similar stores, except pharmacies, in Pennsylvania. This is the first application of White Cross Stores, Inc., #9, for a permit to conduct a pharmacy in Pennsylvania.

In most cases, the other corporate pharmacies under the ownership of A. Robinson & Company also contain the name "White Cross." Two of these stores are located in Richmond and Roanoke, Virginia. Ostensibly a report of incidents occurring at these two stores indicating alleged violation of Virginia and in one instance, Federal law, formed the basis of the board's order denying the present application of White Cross.

The Pennsylvania Pharmacy Act of September 27, 1961, P. L. 1700, sec. 4(6)(b), 63 PS §390-4(6)(b), provides:

"All applicants shall be of good moral and professional character; in determining this qualification, the board may take into consideration among other things the conduct and operation of other pharmacies conducted by said applicant."

Other provisions of the licensing section of the act require, inter alia, that certain books, equipment and physical facilities be present at the pharmacy and also require the assurance that a duly registered pharmacist will be present at all times when the pharmacy is open. The physical facilities proposed to be used by the applicant meet the requirements of the Pharmacy Act and the rules and regulations of the board.

The order of the board states that the reason for the refusal of the permit is that "the applicant does not

meet the standard of good professional character required by the Pharmacy Act. . . ." This decision was reached after a hearing held by the board on September 17, 1963.[1] The adjudication under the heading "Conclusions" sets forth that

"The applicant is a wholly owned subsidiary of A. Robinson & Company which operates pharmacies in Richmond and Roanoke, Virginia; and in the operation of these pharmacies, A. Robinson & Company:

"1. Has failed to have a registered pharmacist in charge of the pharmacy at all times that it is open;

"2. Has compounded, dispensed or sold a drug which contained more or less than the proportionate quantity of ingredient or ingredients specified by the person who prescribed such drug;

"3. Has sold a Federal Legend Drug without a prescription in violation of the Federal Act; and

"4. Has failed to properly stock or procure ingredients required to fill simple prescriptions presented to it."

It seems that the sole complainant objecting to the issuance of a permit to White Cross is the Allegheny County, Pa., Pharmaceutical Association. This organi-

---

[1] The hearing was held almost one year after the appellant filed its application on September 25, 1962. Subsequently, on April 23, 1963, appellant instituted an action in mandamus, Commonwealth dkt. 1963, 203, praying this court to direct the board to pass upon its application. In its answer, the board admitted all of White Cross' material allegations concluding "Wherefore the defendant (board) has no objection to the Court making an Order as prayed for in the within Complaint." The court then entered a summary judgment on May 2, 1963, directing the board to pass upon the application forthwith. *Six days later* on May 8, 1963, the board voted *not to grant* a pharmacy permit to White Cross. However, it was not until August 15, 1963, after applicant's repeated requests for the reasons for the board's refusal that the board finally furnished the same. Thereafter on September 17, 1963, the board held a hearing and five and one-half months later filed its adjudication and order on March 3, 1964.

zation hired investigators in Virginia who procured prescriptions from a Richmond physician for the supposed use of patients who presumably were represented to be in need of the medication he prescribed.

John B. Simmons of Richmond, Va. was called as a witness by the association. He stated he is an attorney and also operates an investigative agency under the name of Simmons & Powell and that he was so engaged on March 8, 1963. His testimony was to the effect that on April 8, 1963, he entered the Richmond White Cross store with a single prescription and was told he could pick up the item prescribed the following morning. On returning the next day Simmons found the pharmacy department closed but the prescription was filled when he returned at 2 p.m. that day. However, on five other occasions when the association's two investigators went to this pharmacy they found a pharmacist on duty and no absence was shown at the Roanoke store.

The board's second conclusion is based on Simmons' testimony that the prescription which had been filled for him on April 8, 1963, was forwarded to Bernard Schiller, a pharmacist and president of the Allegheny County Pharmaceutical Association. Mr. Schiller testified that he examined the prescription consisting of packets of Dover Powders and found that the powders varied in weight from 11 to 21 grains in filling a prescription calling for each powder to contain 16 grains. The prescription was not offered in evidence and the powders passed through various hands before appearing at the hearing.

Maynard R. Powell, Jr., testified that he is a law partner of Simmons and also his partner in the investigative business. He stated that he entered the Richmond store on a date he could not recall and secured the filling of a prescription for a bottle of Phenolated Calomine Lotion. This bottle was forwarded to the Allegheny County Pharmaceutical Association and

turned over by it to the board. The board's chemist testified that the lotion contained a two percent solution of phenol and that this was in excess of the formula in the United States Pharmacopeia which calls for a one percent solution. The witness said, however, that he did not see the prescription which was presented in securing the lotion in question and no other evidence regarding the obtaining of the prescription was produced.

The board's third conclusion relates to an alleged incident which occurred in a White Cross store in Roanoke, Virginia. The association called as a witness Elder H. Stein, who testified he is a pharmacist and a traveling representative of the Texas Pharmacal Company. He stated that in the Spring of 1963, he entered the Roanoke store, went to the pharmacy department, asked for and was sold a bottle of Auralgen, a Federal legend drug, without a prescription which is required by law. This witness testified that he had no purpose in making the purchase other than to satisfy his curiosity as to what might happen; that he was not asked to do so by anyone and was not paid for making the purchase; that when he returned to Pittsburgh he delivered the bottle to Mr. Schiller who asked him to make an affidavit. Stein said that Schiller had never discussed the White Cross pharmacy situation with him before and when asked whether he was aware White Cross had applied for a pharmacy permit in Pennsylvania Stein answered: "I don't recall."

The testimony offered with respect to the board's fourth conclusion was given by Simmons and Powell. Simmons testified that on March 8, 1963,

"I had three prescriptions which had been given to me by a doctor in Richmond and I had directions to give them to the White Cross store and the pharmacist told me that he would fill one of them but he did not have all the ingredients on hand, and he could not fill

them because the drug houses would be closed on Saturday and he could not get the materials."

Powell testified that on March 29, 1963, he entered the White Cross store in Richmond and attempted to have a simple prescription filled but was advised by the pharmacist that the ingredients were not available.

In the instant case the board has denied a license to a Pennsylvania corporation on the ground that some irregularities occurred in another State, Virginia, where wholly owned subsidiaries of A. Robinson & Company operate drug stores and in addition sell various toilet articles. The board says in effect that whatever irregularity occurred in Virginia can be visited upon the applicant-Pennsylvania corporation despite the fact that it has not operated a pharmacy and had nothing to do with the Virginia stores.

It is true that all the applicant's stock is owned by A. Robinson & Company but we are not fully convinced that as a matter of law the applicant must suffer the drastic consequences imposed by the board's denial of a permit. We think it could be argued with a fair degree of reasonableness that under all the facts and circumstances of this case the denial of a permit would be an unwarranted application of the theory of "guilt by association."

The evidence shows that A. Robinson & Company owns the stock of a corporation which operates pharmacies under the name of "White Cross" in Virginia and in other States. The board supports its order by examining in some detail the operation of *one* store, viz., Richmond; only one incident was reported at the Roanoke store. There was no evidence of irregularity at any other White Cross store. Are the incidents in Richmond to taint *all* the other White Cross stores now and in the future, including separate corporate entities in other States?

We do not believe the incidents at the Richmond

store or the one at Roanoke are sufficient, in and of themselves, to establish a willful, preconceived and settled course of illegal conduct or that, as the board has found, "The applicant does not meet the standard of good professional character required by the Pharmacy act. . . ." It is interresting and we think significant that although these alleged irregularities were not in accord with the rules and regulations of Virginia and in one instance, of the Federal Government, no action has ever been taken by either of them against A. Robinson & Company or its White Cross stores by way of reprimand, citation, suspension or otherwise. In fact, the record shows no request by anyone that such action be taken.

A fundamental question in this case is whether the board had before it substantial evidence to support its adjudication. The Administrative Agency Law, Act of June 4, 1945, P. L. 1388, sec. 44, 71 PS §1710.44, provides that an adjudication be affirmed *unless* "any finding of fact made by the agency and necessary to support its adjudication is not supported by *substantial* evidence." [2] The phrase "substantial evidence" has been defined in a frequently quoted opinion written by Mr. Justice (later Chief Justice) Stern in Pennsylvania Labor Relations Board v. Kaufmann Department Stores, Inc., 345 Pa. 398 (1942), at 400:

". . . Upon judicial review, however, it is the duty of the Court to determine whether the findings of the board are supported by the substantial and legally credible evidence required by the statute and whether the conclusions deduced therefrom are reasonable and not capricious. All orders and decrees of legal tribunals, including those of administrative boards and commissions, must be supported by evidence *sufficient to convince a reasonable mind to a fair degree of cer-*

---

[2] Emphasis throughout ours unless otherwise noted.

*tainty;* otherwise our vaunted system of justice would rest upon nothing higher than arbitrary edicts of its administrators. *'Substantial evidence is more than a mere scintilla.* It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion': Consolidated Edison Co. v. National Labor Relations Board, 305 U. S. 197,229. 'Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established': National Labor Relations Board v. Columbian Enameling & Stamping Co., 306 U. S. 292,300. *'The rule of substantial evidence is one of fundamental importance and is the dividing line between law and arbitrary power':* (citing cases). . . ."

This definition of "substantial evidence" was quoted with approval by Mr. Justice Drew in Pennsylvania State Board of Medical Education and Licensure v. Schireson, 360 Pa. 129 (1948), and was followed by Judge Wright in State Board of Osteopathic Examiners of Penna. v. Berberian, 200 Pa. Superior Ct. 533 (1963), affirming the opinion of President Judge Sohn in 79 Dauph. 297.

Appellant complains strenuously that after a period of long delay during which the board failed to act upon its application, although the original objections, all minor in nature, had been rectified, the present objections were substituted while the application was before the board for consideration; that this was done at the instance of the Allegheny County Pharmaceutical Association and that a member of the board had stated that he could not and would not vote to grant a license to the applicant. At the hearing the board member was called as a witness [3] by the applicant and questioned in

---

[3] It was stipulated by the parties that the mere calling of this witness by the applicant would not, in and of itself, disqualify him from participating in the proceedings as a member of the State Board of Pharmacy.

regard to this alleged statement. He testified: "The conversation was composed of questions and what I told him I can't recall because it was a telephone conversation."

Certain innuendoes appear in the record concerning the "discount" nature of the White Cross operation. Whether discounting is a merchandising practice of White Cross pharmacies generally or whether such will be the case with this particular applicant, there is no evidence of record. In any event, such evidence would be entirely irrelevant to a licensing proceeding unless it could be shown that this practice in some way endangers the health and safety of the public. See Nevins, Inc. v. State Board of Pharmacy, 41 D. & C. 325, 50 Dauph. 234 (1941), Hargest, P. J.

We are fully conscious of the need to maintain high standards in the pharmaceutical profession and that duly licensed pharmacies as well as applicants must meet the required standards for the protection of the health of the community. On the other hand, we cannot disregard the "Substantial Evidence Rule" which the legislature and the Supreme Court of Pennsylvania have directed shall be applied in testing the decisions of Administrative Boards and Commissions. Applying this rule, we are constrained to hold that the board's adjudication and order must be set aside. It will be noted, however, that upon granting a permit to the applicant, the State Board of Pharmacy will be able to exercise adequate supervision of a Pennsylvania corporation which will be under the board's jurisdiction with respect to the operation of the applicant's pharmacy and with power to suspend or revoke its permit for just cause.

And now, December 28, 1964, the appeal is sustained and the Pennsylvania State Board of Pharmacy is directed to issue a permit to White Cross Stores, Inc. #9, to conduct a pharmacy.