## Cohen *v.* Board of Pharmacy.

Argued December 6, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER and ROGERS. Judge MANDERINO did not participate in the decision.

*J. Thomas Menaker,* with him *McNees, Wallace & Nurick,* for appellant.

*Gerald Gornish,* with him *Walter W. Wilt,* Assistant Attorney General, and *J. Shane Creamer,* Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., January 17, 1972:

This is an appeal from an order of the State Board of Pharmacy which suspended Leonard S. Cohen's pharmacist's license for a period of one year and which revoked Cohen's pharmacy permit indefinitely. The Board charged Cohen with "grossly unprofessional conduct" in connection with sales of material used in drug trafficking. Cohen appealed the suspension and revocation to this Court on the grounds that the Board did not have any legal authority for its order. Argument was heard June 4, 1971 by a three-judge panel and then directed by the Court for *en banc* argument. We now affirm.

The State Board of Pharmacy, after hearing, adopted the following findings of fact and conclusions of law:

"FINDINGS OF FACT"

"1. That Respondent, Leonard S. Cohen, 321 Seneca Street, Harrisburg, Pennsylvania, is the holder of

400

Registered Pharmacist's License No. 17730, issued January 28, 1937.

"2. That Respondent, Leonard S. Cohen, t/a Senate Drug Store, Third and Boas Streets, Harrisburg, Pennsylvania, is the holder of Pharmacy Permit No. 286.

"3. On August 12, 1970, Leonard S. Cohen, individually and t/a Senate Drug Store, Third and Boas Streets, Harrisburg, Pennsylvania, (hereinafter referred to as Respondent) sold 65000 Lilly #5 Gelatin caps, 2 one-pound cans of Lactose and 1 five-oz. bottle of Quinine Hydrochloride to James Ottis Hicks, 2918 Oakford Avenue, Baltimore, Maryland and James Clarence Blunt, 4618 Pall Mall Road, Baltimore, Maryland.

"4. As a result of the sale made to James Clarence Blunt and James Ottis Hicks, as set forth in paragraph 3, both suspects were arrested and convicted in the State of Maryland for possession of controlled paraphernalia.

"5. Between January 31, 1969 and August 11, 1970, Respondent purchased 1,646,000 Gelatin #5 capsules from M. Brenner Wholesale Drug Co., 7th and Division Streets, Harrisburg, Pennsylvania.

"6. From March 20, 1969 to August 21, 1970 Respondent purchased approximately 98 lbs. of Lactose from M. Brenner Wholesale Drug Co.

"7. Between February 9, 1970 and August 10, 1970, Respondent purchased approximately 9¾ lbs. of Quinine Hydrochloride.

"8. That there is very little, if any, legitimate need for a druggist to stock large quantities of #5 Gelatin capsules since prescriptions are, for the most part, prepackaged.

"9. There is very little, if any legitimate need for a druggist to stock large quantities of Lactose and Quinine Hydrochloride.

"10. Gelatin #5 capsules, Lactose and Quinine Hydrochloride are favorite items used to dilute and dispense narcotics in today's illegal drug traffic.

"11. That from January 31, 1969 to August 12, 1970, Respondent sold all or most of the items hereinbefore mentioned in paragraphs 5, 6 and 7 (including the items listed in paragraph 3) to drug traffickers, most of whom were from the State of Maryland.

"12. Most sales took place in Respondent's home and not at his drug store.

"13. That Respondent was aware that the items being sold were being used in the illicit drug trade.

"14. That Respondent continued to make such sales to drug traffickers from the State of Maryland even after having read a newspaper clipping furnished by one of his customers, indicating that there was a Maryland law making it illegal to possess certain paraphernalia used to dilute and distribute drugs.

"15. That Respondent realized a profit of 300% to 400% on all sales of the items hereinbefore specified, said margin of profit being extremely high in the drug field.

"16. That Respondent never notified the Harrisburg Police Department of his sales until February or March, 1970, and only then in connection with his sales to one Elizabeth Parnham, a known, local drug addict.

"17. Respondent never notified the Harrisburg Police Department of his sales to individuals from the State of Maryland until July of 1970.

"18. Respondent never furnished the Harrisburg Police Department with the names, license plates or telephone numbers of any of the individuals from the State of Maryland to whom he made sales.

"19. During the course of his sales of #5 Gelatin capsules, Lactose and Quinine Hydrochloride to individuals involved in the illicit drug traffic, Respondent

was never working in cooperation with the Harrisburg Police Department or the authorities in the Division of Drug Control, Pennsylvania Department of Health.

"20. Respondent did not provide information concerning his sales to individuals from the State of Maryland until he was confronted by agents of the Division of Drug Control, Pennsylvania Department of Health, said confrontation occurring on or about August 21, 1970.

## "Conclusions of Law"

"On the basis of the foregoing Findings of Fact, the State Board of Pharmacy concludes as follows:

"1. The State Board of Pharmacy has jurisdiction in this case.

"2. Respondent was notified of the charges against him and was given an ample opportunity to be heard.

"3. The Respondent, Leonard S. Cohen, 321 Seneca Street, Harrisburg, Pennsylvania, holder of Registered Pharmacist's License No. 17730, is guilty of grossly unprofessional conduct, in violation of Section 5 of the Pharmacy Act, supra, which provides:

" '(a) The Board shall have the power to revoke or suspend the license of any pharmacist upon proof satisfactory to it that:

" ' . . . .

" '(9) He is guilty of grossly unprofessional conduct.'

"4. The Respondent, Leonard S. Cohen, t/a Senate Drug Store, Third and Boas Streets, Harrisburg, Pennsylvania, holder of Pharmacy Permit No. 286, is guilty of violating Section 5 of the Pharmacy Act, supra, which provides:

" '(b) The Board shall have the power to revoke or suspend the permit of any pharmacy upon proof satisfactory to it that:

" ' . . . .

" '2. The holder thereof has violated any of the provisions of this act or regulations of the board ap-. plicable to him or any provisions of the Drug, Device and Cosmetic Act or the Federal Act, or has ordered a pharmacist in his employ to engage in any aspect of the practice of pharmacy in contravention of any of the aforesaid acts or regulations thereunder.' "

Cohen argues that he did not violate any law of the Commonwealth nor any regulation of the State Board. The Board, however, contends that Cohen violated Section 5 of the Pharmacy Act, Act of September 27, 1961, P. L. 1700, 63 P.S. 390-1 et seq.

Section Five of the Pharmacy Act (63 P.S. 390-5) gives the Board authority to revoke or suspend the license of any pharmacist and also to revoke or suspend the permit of any pharmacist for violations under the Act. It is the Board's contention that Cohen violated Section 5(a) (9) of the Pharmacy Act and that such a violation permits the suspension of his license as pharmacist and also the revocation of his pharmacy permit under Section 5(b) (2). Both the suspension of the pharmacist's license and the revocation of the pharmacy permit involve the same legal question and the same alleged misconduct.

The relevant portion of Section 5(a) (9) of the Pharmacy Act reads as follows: "5(a) The Board shall have the power to revoke or suspend the license of any pharmacist upon proof satisfactory to it that: . . . (9) he is guilty of grossly unprofessional conduct. The following acts on the part of a pharmacist are hereby declared to constitute grossly unprofessional conduct of a pharmacist . . . ." (Act of September 17, 1961, P. L. 1700, 63 P.S. 390-5(a) (9) ).

Section 5(a) (9) then lists thirteen items which are considered to be grossly unprofessional conduct. The Board concedes that Cohen did not violate any of the

404

thirteen subsections under 5(a)(9). It is the Board's position, however, that the Board can specify other conduct which is not enumerated as unprofessional conduct.

The Legislature, in providing for pharmaceutical control, created the State Board of Pharmacy, comprised of five registered pharmacists who have practiced in this state at least ten years. Additionally, they are served by an administrative secretary who is also a licensed pharmacist. There can be no doubt that the Legislature intended the industry to be regulated by its own peers—those with expertise in the problems of the field. To this end, they gave the Board, independent of its duty and power to promulgate rules and regulations, the power and duty "to regulate the practice of pharmacy." Section 390-6(h)(i) of the Pharmacy Act, 63 P.S. §390-6(h)(i). In the exercise of this power, the Board found Leonard Cohen's conduct grossly unprofessional.

The Legislature has not limited the definition of "unprofessional conduct" to the thirteen subsections in the Act. This standard is simply clarified by the means of thirteen examples which create a general understanding of that phrase. Cohen was not misled or uninformed as to the nature of his acts, and he so testified.[1] For us to hold that any determination of un-

---

[1] In his testimony, Cohen placed great emphasis upon his contention that these sales were made to aid the Harrisburg Police Department in their narcotics investigation. As a result, R. Bruce Miller, Chairman of the Board, asked Cohen, "If you heard of another druggist selling what you sold and not getting in contact with the police first, would you say that would be unprofessional?" Cohen responded, "Yes sir." After hearing conflicting testimony regarding Cohen's alleged contacts with the police, the Board in its findings of fact held that Cohen made unethical sales for at least thirteen months *before* contacting the police. Therefore, by his *own* standards, Cohen was guilty of unprofessional conduct.

professional conduct must be based upon the thirteen subsections of Section 5 would be to foster the undesirable result that any conduct, no matter how shady or unethical, could not be the source of licensing sanctions until the Board by specific regulation or the Legislature by statute acts to formally censure. Such reasoning rewards the unscrupulous but novel pharmacist at the expense of the public's welfare. We do not believe that the Legislature intended this result from Section 5.

Appellant alternatively contends that to permit the Board to suspend or revoke licenses upon the standard of "grossly unprofessional conduct" is a violation of his right to due process of law.

In prohibiting unprofessional conduct, the Commonwealth is not defining criminal conduct, but is requiring that pharmacists be in tune with contemporary standards of moral and ethical conduct. Leonard Cohen either knowingly violated these standards of conduct or was completely out of line in *his* concept of morality and ethics. In either instance, the welfare of the people dictates the revocation of his license. Due process requires only that the state inform licensees that they may be the subject of revocation if their judgment of moral and ethical standards is grossly inadequate; it does not require that the state delineate the very moral standards which are the bases for their judgment. It is this innate awareness of these standards that is under scrutiny.

Far from failing to provide the licensee with any concept of what is meant by "grossly unprofessional conduct" the Pharmacy Act is one of the most explicit in aiding the practitioner. Its thirteen examples provide a more than ample guideline for determining whether conduct may be sanctioned or censured. Most professional licensing statutes do not provide such

helpful examples. Instead, they merely forbid "grossly unethical practice." Yet these much less explicit provisions have been consistently enforced by our appellate courts. *See e.g., State Board of Medical Education and Licensure v. Ferry,* 172 Pa. Superior Ct. 372, 94 A. 2d 121 (1953), affirming 61 Dauph. 260 (1950). In the *Ferry* case, the Superior Court states: " 'Generally speaking, apart from, or in the absence of, statutory definitions, what constitutes unprofessional conduct . . . must be determined by those standards which are commonly accepted by those practicing the same profession in the same territory. In determining what constitutes dishonorable conduct every case must be determined on its own particular facts' : 70 C.J.S., Physicians and Surgeons, §17 (b), p. 877." 172 Pa. Superior Ct. at 377.

The reasoning of the *Ferry* case is clearly applicable to the Board's decision in the instant case. The State Board of Pharmacy has correctly held that the clandestine, large scale sale of drug paraphernalia to criminals trafficking in illicit drugs grossly offends the ethical standards of the Pennsylvania pharmaceutical profession. The decisional law of both this Commonwealth and the Federal Courts support the position that due process is not violated by the Board's decision.[2]

Finally, appellant contends that there is a lack of substantial evidence to support the Board's findings.

---

[2] In *State Board of Osteopathic Examiners of Pennsylvania v. Berberian,* 200 Pa. Superior Ct. 533, 190 A. 2d 330 (1963), the Superior Court left open the question whether "unethical conduct" when standing alone is unconstitutionally vague and indefinite. However, the clear examples of unprofessional conduct given in the Pharmacy Act would preclude such an attack upon that statute. In any event, no court has gone so far as to hold that every possible instance of unprofessional conduct must be specified in advance in order to pass constitutional muster.

Careful study of the record before the Board reveals sufficient competent testimony upon which each finding of fact by the Board can be substantiated.

Finding neither error of law or abuse of discretion on the part of the Board, we issue the following:

### Order

And Now, this 17th day of January, 1972, the order of the State Board of Pharmacy, dated March 17, 1971, which suspended for one year Pharmacist's License No. 17730 and revoked indefinitely Pharmacy Permit No. 286, is hereby affirmed.