Foster, J.
After a formal hearing before a subcommittee of the Medical Committee on Grievances, appellant was found guilty of fraud or deceit in the practice of medicine (Education Law, § 6514, subd. 2, par. [a]) and of unprofessional conduct (Education Law, § 6514, subd. 2, par. [g]). He was charged with submitting false and exaggerated medical reports and bills to an attorney for use in settling personal injury cases. The findings of fact were supported by substantial documentary evidence and testimony and were confirmed by the Medical Committee on Grievances and the Regents’ Committee on Discipline. Appellant’s license to practice medicine was revoked.
We now are asked to determine whether the acts specified constituted “fraud or deceit in the practice of medicine” within the meaning of the Education Law.
It is contended that the Education Law (§ 6514, subd. 2, par. [a]) authorizes suspension or revocation of a license to practice medicine only after a finding, upon due hearing, “ That a physician * * * is guilty of fraud or deceit in the practice of medicine ” (italics supplied), and that this record reveals no such fraud in “ the practice of medicine ”, as that term is defined in subdivision 4 of section 6501 of the Education Law. The latter section and subdivision provides: “A person practices medicine within the meaning of this article * * * who holds himseJf out as being able to diagnose, treat, operate or prescribe for any human disease, pain, injury, deformity or physical condition, and who shall either offer or undertake, by any means or method, to diagnose, treat, operate *177 or prescribe for any human disease, pain, injury, deformity or physical condition.”
Appellant asserts that this definition, when read in the context of other provisions of the Education Law, limits discipline for fraud or deceit in the practice of medicine to practices of so-called “quacks” and “ charlatans ” who practice their fraud within the physician-patient relationship directly upon the patient. He argues that at no time did he mistreat a patient or deliberately submit a false bill or diagnosis to a patient. His ‘1 fraud ’ ’, he claims, was in the realm of the business world, was private in nature, and did not involve his practice of medicine nor cast any doubt upon his behavior or ability insofar as patients were concerned. This argument cannot be accepted.
In the first place, appellant did “ hold himself out ” as being-able to diagnose and treat the conditions of each of the patients involved. In the case of Kaminsky, and possibly of Gonzales, he also “offered” and “ undertook ” to diagnose their conditions, and this he did fraudulently, insofar as the Transit Authority and insurance company were concerned. In the cases of Mrs. Turner, George Turner, and Sadie Cohen, appellant “ offered” to the insurance company to diagnose their conditions and fraudulently submitted his diagnoses to the insurance company without having treated or examined the patients. In all cases, then, appellant did “hold himself out ” and did “offer” or “undertake” to diagnose the physical conditions of the patients. Therefore, he was engaged in the practice of medicine when he committed the fraudulent acts (§ 6501, subd. 4, supra).
Nothing in the statute limits discipline for fraudulent diagnoses to cases where the fraud is perpetrated directly on the patient. Indeed, insurance companies are frequently the ultimate payers of medical bills in personal injury cases, and in this respect are just as much entitled to true medical reports and bills as are the patients. Appellant’s fraudulent scheme, of course, was dependent upon misuse of his medical license, and the submission of false reports and bills to interested persons was an integral part of his medical practice. The preparation of medical reports for various purposes has always been regarded as a necessary part of medical practice, and it makes no difference whether false reports are submitted directly *178 to the patient, attorney, or the insurance company on behalf of the patient. The statute authorizes discipline in any event.
Submissions of false reports of various types to interested persons or institutions other than the patient himself have been found to constitute “fraud or deceit in the practice of medicine ” in numerous cases (Matter of Hutschnecker v. Board of Regents, 269 App. Div. 891, affd. 295 N. Y. 558; Matter of Siegal v. Board of Regents, 270 App. Div. 783, motion for leave to app. den. 295 N. Y. 993; Matter of Tompkins v. Board of Regents, 299 N. Y. 469; Matter of Ray v. Board of Regents, 9 A D 2d 560; Matter of Mester v. Board of Regents, 259 App. Div. 776).
Appellant argues that these cases establish that the concept of ‘ ‘ fraud or deceit in the practice of medicine ’ ’ may be extended beyond fraud in the physician-patient relationship only in cases involving issuance of fraudulent required reports, or cases involving fraud which affects a vital public interest or interferes with governmental control in an area of public concern. Thus, it is argued, the extension in Tompkins {supra) was permissible since interference with supervision over traffic in narcotics was involved. However, none of the cases above cited turned on the fact that the false reports were required by law. But, assuming that appellant’s argument is a sound one, the fraud on the insurance companies here involved did affect a vital public interest and did affect governmental regulation of insurance companies and their rates. The public also was, or could have been, indirectly affected by fraud against the Transit Authority. Thus fraud or deceit in the practice of medicine was established, and this was sufficient to sustain the action of the board without regard to other statutes or regulations.
In addition, revocation was permissible under the other subdivision involved. Section 6514 (subd. 2, par. [g]) provides that “ unprofessional conduct ” shall be grounds for discipline. The Regents are given power to promulgate regulations to give effect to that section. That statute was enacted in 1953 (L. 1953, ch. 682, eff. April 13, 1953). Subdivision 4 of section 30 of the Regulations of the Commissioner of Education specifies certain acts constituting “unprofessional conduct” but specifically states that “Unprofessional conduct” “shall * * * not be limited to the following ”. These regulations were adopted *179 October 28, 1955 and filed January 10, 1956. (N. Y. Off. Comp, of Codes, Rules & regs. [11th Supp.], pp. 231-232, now 8 NYCRR 60.1, subd. [d].) It is argued that section 6514 (subd. 2, par. [g]) and subdivision 4 of section 30 of the regulations illegally were applied retroactively here. Assuming that this statute and the regulations were not intended to be applied retroactively, discipline nevertheless was authorized.
The statute itself authorized discipline for unprofessional conduct, effective April 13, 1953. Appellant’s conspiracy to commit unprofessional acts continued past that date, and well into 1956, when the reports involving Morales and Gonzales were issued. Under the statute itself, without resort to the merely explanatory regulations (which do not purport to contain exhaustive definitions of unprofessional conduct), the board was entitled to find that the fraudulent conspiracy involving appellant was “ unprofessional ”. Appellant’s participation was malum in se and undoubtedly amounted to ‘ ‘ unprofessional conduct ’ ’ under the standards commonly accepted by physicians in this State (Matter of Cherry v. Board of Regents, 289 N. Y. 148, 158-161; Matter of Bell v. Board of Regents, 295 N. Y. 101).
Moreover, the acts were so obviously wrong and violative of the standard of ethics expected of a physician that they constituted “ unprofessional conduct ” even in the absence of regulations defining the term (Matter of Bell v. Board of Regents, supra). The conspiracy, though commenced prior to enactment of the statute authorizing discipline for unprofessional conduct, continued over into the post-statutory period, and thus discipline pursuant to its provisions was justified (cf. People v. Hines, 284 N. Y. 93, 112-114). The conspiracy also carried over into a period subsequent to the filing of the regulations. But the regulations did not “ limit ” unprofessional conduct to the acts therein defined (this is expressly stated in § 30, subd. 4), and thus the absence in the regulations of a description of the behavior herein condemned does not help appellant.
When the Committee on Grievances rendered their formal findings, determination and recommendation, there was an unfilled vacancy as the result of the death of one member. Subdivision 1 of section 6515 of the Education Law provides that the committee shall consist of 10 members, and subdivision 4 *180 requires a unanimous vote to find a physician guilty. However, 6 members constitute a quorum (Education Law, § 6515, subd. 9), and here there was a unanimous vote of a committee consisting of more than the required quorum. Such a vote was a unanimous decision (see Harroun v. Brush Elec. Light Co., 152 N. Y. 212). We have considered carefully the other issues raised by appellant and find them to be without merit.
The order appealed from should be affirmed, without costs.
Chief Judge Desmond and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Order affirmed.