Commonwealth of Pennsylvania, State Board of Medical Education and Licensure *v.* Lloyd A. Grumbles, M.D., Appellant.

Argued September 11, 1975, before Judges CRUM-LISH, JR., WILKINSON, JR. and ROGERS, sitting as a panel of three.

*Neil E. Jokelson,* with him *Mitchell S. Lipschutz,* for appellant.

*Gerald Gornish,* Deputy Attorney General, with him *Robert P. Kane,* Attorney General, for appellee.

OPINION BY JUDGE ROGERS, November 25, 1975:

Lloyd A. Grumbles, M.D., here appeals from an order of the State Board of Medical Education and Licensure revoking his license to practice his profession. Doctor Grumbles has been licensed to practice medicine and surgery since 1952 and he is a board certified psychiatrist. He practiced for governmental agencies until 1957 when he took up private practice in Philadelphia as a psychiatrist. From that date until May of 1970 he resided at 1000 West Cheltenham Avenue with his wife and their children. The doctor's offices were in his residence. Dr. Grumbles' wife, who seems also to have been his patient suffering from an emotional disorder, left him in May of 1970 taking at least one of their children with her. From July 1970 until August 1971 Dr. Grumbles' office was in the Medical Arts Building in Jenkintown, Pennsylvania, and from August 1972 until the hearings in this matter, the last of which was conducted in October 1972, he practiced at 523 West Tabor Road.

The State Board of Medical Education and Licensure, apparently as the result of a communication from one Mrs. Mary Burnahm, a former patient of Dr. Grumbles and friend of both the doctor and Mrs. Grumbles and, after their separation, a friend of Mrs. Grumbles, cited the doctor to appear before it to show cause why his license should not be suspended or revoked. The citation is dated December 23, 1971 and described eight charges of misconduct. Hearings were conducted by the Board commencing in April 1972 and concluding in October of the same year. The Board's adjudication revoking the doctor's license was issued on *November 21, 1974.*

The State Board of Medical Education and Licensure as constituted at the time of the citation and hearings in this matter was by law to consist of seven persons,

two being the Commonwealth's Commissioner of Professional and Occupational Affairs and its Secretary of Health and the other five being physicians appointed by the Governor from a list submitted by the Pennsylvania Medical Society. Section 412 of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. §122. The practice of medicine at the time the citation was issued and hearings conducted in this case was governed by the then Medical Practice Act, Act of June 3, 1911, P.L. 639, *as amended,* 63 P.S. §401 et seq. Section 12 of that Act, 63 P.S. §401, provided in part:

> "The Board . . . may, for a definite or indefinite time, refuse, revoke, or suspend a license for any or all of the following reasons, to wit: . . . . The board may so act upon satisfactory proof of grossly unethical practice, or any form of pretense which might induce persons to become prey to professional exploitation . . . ."

The hearings in this matter were conducted exclusively by physicians. Five physicians (one of which was a representative of the Department of Health) attended the first hearing conducted on April 13, 1972; four (again including the representative of the Department of Health) appeared at the second hearing on May 25, 1972. Three attended the final hearing conducted on October 10, 1972. Of the five members participating, two members attended all hearings and three attended only two.

Section 412 of the Administrative Code of 1929 was amended by the Act of July 20, 1974, P.L. 549, 71 P.S. §122 (Supp. 1975-1976), so as to provide that the State Board of Medical Education and Licensure should consist of nine members, two of whom should be the Commonwealth's Commissioner of Professional and Occupational Affairs and its Secretary of Health, five should be physicians, one should be a person knowledgeable in the field of allied health services, and the remaining person should

be a representative of the public at large.[1] Hence, between the dates when the citation was issued and the hearings conducted in this matter and the time the adjudication was rendered the Board was reconstituted. The citation in this case is signed by one John F. Hartman, M.D. as Chairman of the Board. The notes of testimony of the hearings show them to have been presided over by John W. Robertson, Jr., M.D., as Chairman of the Board. The adjudication filed more than two years later is signed by William J. Kelly, M.D., as Chairman of the Board, and by the Commissioner of Professional and Occupational Affairs. We record these circumstances because the deputy attorneys general representing the Board urge us to give great weight to the findings contained in the adjudication because members of the Board saw and heard the witnesses. While a person bearing the same name as William J. Kelly, M.D., the signer of the adjudication, was present at some but not all of the hearings (he was not present at the hearing when Dr. Grumbles' defense was presented), there is no indication that any of the other persons who attended the hearings in 1972 were members of the Board when the adjudication was filed in 1974. The following explanation for the delay in making the adjudication appears in that document:

"The time required to reach a decision and to have it properly embodied in this adjudication was regrettably lengthened by the fact that the attorney who had presented the case and who was to prepare the adjudication left the employ of the Commonwealth. Unfortunately, this was followed by a mix-up in assignments until finally, an attorney in the Department of Justice renewed (sic) the entire transcript and prepared the adjudication with the assistance of

1. The Medical Practice Act hereinbefore cited was repealed by the Act of July 20, 1974, P.L. 551, and by the same Act a new Medical Practice Act of 1973 was substituted, 63 P.S. §421.1 et seq. (Supp. 1975-1976).

the Board. While a long period of time has unfortunately elapsed from the time of the hearing, the Board believes that its order is necessary to protect the public."

The assistant attorney general then attached to the State Board of Medical Education and Licensure presented the charges most vigorously. As the adjudication states, another member of the attorney general's staff, acting for the Board, reviewed the transcript and prepared the adjudication. If this dual role of the Board's counsel is not a violation of due process, it comes perilously close to being so. *Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission v. Feeser,* 20 Pa. Commonwealth Ct. 406, 341 A.2d 584 (1975). Since the consequence of a holding that Dr. Grumbles' right to an apparently fair hearing would be a remand of the case for new hearings, an action which would simply prolong the case to the additional inconvenience of the appellant, we will dispose of the matter on the substantive grounds.

We feel compelled to allude to what may be an additional infirmity in the proceedings. It is clear that the State Board of Medical Education and Licensure, as under the statute it was required to do, acted in both a prosecutorial and adjudicative capacity. In the recent case of *Dussia v. Barger,* —— Pa. ——, —— A.2d —— (No. 17 May Term 1975, filed October 3, 1975), our Supreme Court struck down regulations of the Commissioner of the Pennsylvania State Police providing for a Disciplinary Board appointed by the Commissioner to investigate complaints against members and to make recommendations to the Commissioner as to whether he should convene a court martial, whose recommendations would in turn be reviewed and accepted or disapproved by the Commissioner. *Compare Withrow v. Larkin,* —— U.S. ——, 43 L. Ed. 2d 712 (1975). Again, however, we do not ground our decision on this issue for the reason,

among others, that it was not raised by the appellant, *Dussia v. Barger* not having been decided by the Supreme Court when the case was argued.

Rather, we set the adjudication aside because we have concluded that the findings of the Board are not supported by substantial evidence much less the clear and satisfactory evidence necessary to support charges of unprofessional conduct. *In re Shigon,* —— Pa. ——, 329 A.2d 235 (1974).

As we have noted, the case was vigorously prosecuted by the then Board's counsel. It was equally stoutly defended by Dr. Grumbles' counsel. Numerous objections to questions and answers were made by both throughout the lengthy hearings. The physician who presided at the hearings was, as he several times mentioned, ill-equipped to deal with the legal niceties of counsel's positions. Our examination of the record convinces us that at least one serious error was committed. One of the charges was that Dr. Grumbles permitted "unlicensed *and* unqualified patients and employees" to administer medication orally and by injection and to make glucose tolerance tests. No law, regulation, or practice of the profession was cited or alluded to making it a requirement that persons performing such duties should be licensed. When Dr. Grumbles was sought to be questioned by his counsel on the subject of the training and supervision he had given to those persons who were alleged to have given such medication and performed such tests, the assistant attorney general's objections were sustained and the inquiry thus ended. The adjudication includes a finding that the doctor permitted "unlicensed and unqualified persons to administer medication and tests."

A more serious fault with the Board's adjudication is that it is apparent that no consideration was given to the clear bias or interest of the Board's principal witnesses or to the fact that their testimony without exception concerned incidents long antedating December 1971;

incidents concerning which they failed to complain at the time, and following which they continued to be the appellant's friends and patients.

As a psychiatrist, Dr. Grumbles treated persons suffering from a variety of emotional and mental disorders, including persons addicted to alcohol and drugs. He took a particular interest in a condition known as hypoglycemia, an insufficiency of blood sugar. Many of his patients were referred to him as a specialist by other doctors.

Dr. Grumbles and his wife appear to have been charitable in the extreme. Over the years they admitted to their large home as residents many of his patients who needed constant attention and a place to live, providing them with food, lodging and care for extended periods. This kindness was in some cases repaid by these friends and patients by assisting Mrs. Grumbles with household chores and Dr. Grumbles with the care of and attention to other patients.

Following their separation, Dr. Grumbles and his wife became locked in bitter divorce and custody proceedings. A few of the doctor's patients adhered to and took up his wife's cause. Some idea of the atmosphere of the matter is conveyed by the fact that among the things charged against Dr. Grumbles in the citation were that he exposed himself to patients, that he permitted improper sexual activities to take place between patients in his office and that he performed presumably illegal abortions. No evidence whatsoever was adduced in support of these charges.

The Board concluded, however, that charges that Dr. Grumbles maintained his medical office in an unsanitary condition, that he permitted "unlicensed and unqualified patients and employees" to administer medication and tests, that he "seduced female patients [naming them] against their will,"[2] and that he personally took drugs

---

2. No credible evidence was produced that Dr. Grumbles had

to such an extent as to impair his ability to function as a physician, were proved.

The Board's findings are expressly based on the testimony of four persons.

Mr. Gearhard Malessa, a patient and friend of the doctor, entered into a meretricious relationship with Mrs. Grumbles in the Grumbles' home. He was observed in and about her residence in Allentown after the separation. The appellant's brief informs us that he is now married to the former Mrs. Grumbles. The record further establishes that after Mrs. Grumbles' departure from the Grumbles' residence Malessa applied Dr. Grumbles' signature stamp to a form falsely certifying that Dr. Grumbles had provided medical services to Malessa's then wife, thereby fraudulently obtaining from an insurance carrier "reimbursement" in the amount of $400.

The Board also fully credited the testimony of Harry Irwin Davis, III, Mrs. Grumbles' brother, who enjoyed the hospitality of the Grumbles' home during holidays for some years. After the separation, Mr. Davis was active with Mr. Malessa in removing or attempting to remove personal property from the Grumbles' home for delivery to his sister.

A Mrs. Karen Woznicki testified that Dr. Grumbles had seduced her when she was under hypnosis. No time was specified for this occurrence but Mrs. Woznicki admitted that she continued for a time thereafter to consult the doctor, and that the doctor dismissed her as a patient despite her urgent entreaties that he continue her in his care.

Mrs. Mary Burnahm seems to have been the person whose complaint in April of 1971 led to these proceedings.

---

·sexual relations with anyone against their will. Two former patients other than Mrs. Woznicki whose testimony is discussed in the text of this opinion, testified to consensual relations. One of these was a witness for the doctor. The other was a person not named in the citation.

Mrs. Burnahm testified to an act of sexual perversion committed upon her by Dr. Grumbles in 1963. Not only did Mrs. Burnahm then fail to complain of this act she continued as a patient of Dr. Grumbles and a friend of both him and his wife until the parties' separation in May of 1970. Indeed, in April of 1970 she appeared at the Grumbles' residence with children, one of whom had the measles, and was, with her family, installed in the household. She further admitted that commencing in January 1970 she importuned the doctor to certify that she was totally disabled to bolster a claim for public assistance for her and her children. Dr. Grumbles refused this request and it is apparent from Mrs. Burnahm's testimony that she believed that this was inefficient, if not unfriendly, of the doctor.

In his case, Dr. Grumbles denied that his office was unsanitary or that medications were permitted to lie about; he denied the sexual irregularities charged to him; he denied Mr. Malessa's assertion that he had condoned the Malessa relationship with Mrs. Grumbles; he denied any nonconsentual relationships with any patients; and he denied that he took habit-forming drugs. Other witnesses, including a registered nurse who worked with him, a physician, a number of patients and others gave evidence that his office was not unsanitary, that his behavior was proper and that he functioned extremely well. Except for ties of respect or affection, these witnesses appear to have had no bias or interest in assisting the doctor in this litigation. He additionally introduced an impressive file of commendations by associates in the profession and former patients.

The Board's adjudication provides no explanation for its acceptance of the testimony of Malessa, Davis, Woznicki and Burnahm, and its rejection of that of Dr. Grumbles' witnesses. While there is no general requirement that fact finders explain why they find the testimony of some witnesses credible and that of others not worthy of

belief, we are satisfied that the members of this Board in this case either had no instruction in the rules relating to the bias and interest of witnesses as affecting the weight to be given their testimony or that, if informed on the subject, they failed to observe them. The explanation may lie in the two years' delay in the preparation of the adjudication by the Board's attorneys, finally approved by some Board members not present at the hearings.

Further, the adjudication shows no awareness of principles concerning the weight to be given to uncorroborated charges of private misconduct not contemporaneously complained of and followed by continued association.

In *State Board of Osteopathic Examiners of Pennsylvania v. Berberian,* 200 Pa. Superior Ct. 533, 190 A.2d 330 (1963), the Superior Court affirmed a lower court's order setting aside the suspension of a physician's license. Among the charges against the doctor was that he had committed an act of rape four years previous to the hearings. Both reviewing courts concluded that the testimony of the victim did not provide substantial evidence for the truth of the charge. The following statement of the lower court, quoted by the Superior Court, is equally applicable to Mrs. Burnahm's charge that Dr. Grumbles committed a sexual act in 1963 and Mrs. Woznicki's charge that the doctor had intercourse with her sometime prior to 1967:

" 'This was the type of a situation where one person accuses another without any corroborative evidence at all. Thus without corroborative evidence, together with the legal presumption which arises from the lapse of time as has been pointed out in the Pennsylvania State Board of Medical Education and Licensure v. Schireson, 360 Pa. 129 at 132 (1948) would certainly be more than ample to raise such a reasonable doubt that the testimony should have been regarded as insufficient to support the conclusion of the Board.' " 200 Pa. Superior Ct. at 537, 190 A.2d at 332.

The testimony of the four witnesses upon whom we have hereinbefore commented relating their observations of the doctor giving himself injections are insufficient support for the Board's finding *that he was addicted to habit-forming drugs which impaired his ability to function as a physician.* There was no proof that the substances injected were drugs or that the appellant was addicted and the record as a whole demonstrates rather clearly that he continued to function as a physician. Further, the Superior Court has commented on different but no less degrading charges as follows:

"It is unnecessary to relate the sordid and repulsive allegations made by the husband; it is sufficient to say that these charges are to be looked upon with the greatest suspicion for they are '. . . of so dark a nature, so easily charged, and the negative so difficult to be proved, that the accusation should be clearly made out; for if false, it deserves a punishment inferior only to that of the crime itself': 4 Bl. Comm. *215; Cf. Freedman on Marriage and Divorce, p. 707." *Kranch v. Kranch,* 170 Pa. Superior Ct. 169, 171, 84 A.2d 230-31 (1951).

Finally, since we are satisfied that the Board's findings are not supported by substantial evidence, we are not required to answer in this case the appellant's very persuasive argument that the Board's delay for more than two years in making its adjudication on the sole ground that a lawyer could not be found to perform this task was in itself such a denial of due process that the adjudication should be set aside.

### ORDER

And now, this 25th day of November, 1975, it is ordered that the appeal of Lloyd A. Grumbles, M.D., be and the same hereby is sustained, and that the order of the State Board of Medical Education and Licensure dated November 21, 1974 be and the same hereby is set aside.