C. Richard Miller, D.D.S., Thomas R. Snell, D.D.S., Charles M. Hughes, D.D.S., Daniel K. Lovette, D.D.S., Petitioners *v.* Commonwealth of Pennsylvania, State Dental Council and Examining Board, Respondent.

Argued September 11, 1978, before Judges BLATT, DiSALLE and MacPHAIL, sitting as a panel of three.

*David A. Wion,* with him *James W. Reynolds,* and *Reynolds, Bihl and Schaffner,* for petitioners.

*William Wheeler,* Assistant Attorney General, with him *Louis B. Rubin,* Assistant Attorney General, and *Robert P. Kane,* Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, January 11, 1979:

Appellants, all of whom are oral surgeons licensed by the State Dental Council and Examining Board (Council) to practice dentistry in Pennsylvania, appeal from an adjudication and order of the Council which suspended their licenses to practice[1] because of alleged violations of Section 3(i) of The Dental Law (Law), Act of May 1, 1933, P.L. 216, *as amended,* 63 P.S. §122.[2] The Council took its action after four days of extensive hearings. Its adjudication includes 114 separate findings of fact. It is quite obvious to us that this case received the very careful consideration it deserved and that the Council acted only after deliberating at length.

---

[1] Appellants Snell, Hughes and Lovette were suspended for three (3) months and Appellant Miller for six (6) months. Charges against a fifth dentist were dismissed by the Council.

[2] The State Dental Council and Examining Board . . . shall have power:

. . . .

(i) To suspend and revoke, by majority action of the entire board, the license or registration of any licensee who has been guilty of a crime or misdemeanor involving moral turpitude; or of a violation of any of the provisions of this act; or of fraudulent or unlawful practices, or fraudulent, misleading or deceptive representations; or of unprofessional conduct, detrimental or dangerous to the public health, safety, morals or welfare. . . .

During the period from 1969 through 1971, all of the Appellants practiced oral surgery in the Miller Clinic (Clinic) which was a sole proprietorship operated and supervised by the Appellant, Miller. An investigation and review conducted by representatives of Pennsylvania Blue Shield of those persons or institutions receiving more than $10,000.00 in payment for oral surgery services for any specific year revealed numerous discrepancies at the Miller Clinic. These discrepancies were reported to the Council whereupon citations were issued to each of the Appellants charging them with violating Section 3(i) of the Law. Specifically, Miller, as the chief administrative and supervising dentist, and each of the other Appellants as the actual perpetrators were cited for filing false claim reports with Pennsylvania Blue Shield. The Council found that such false claim reports had been filed and concluded that that practice violated that portion of Section 3(i) of the Law which prohibits fraudulent or unlawful practices or fraudulent misleading or deceptive representations and unprofessional conduct detrimental to the public health, safety, morals or welfare.

From the record it appears that the Clinic operated mostly on referrals from other dentists. When a patient appeared at the Clinic for the first time, a patient chart form was completed and a panorex x-ray was taken. The patient was then seen by one of the surgeons at the Clinic and the type of work to be done was determined. For each patient the record of treatment was recorded on the patient's chart by the surgeon performing the treatment. The surgeon who performed the surgery was responsible for listing the exact operative procedure on the patient's chart. Surgery was performed either at the Clinic or at a nearby hospital. Patient charts and cards went with the patient at all times. At the end of the day the pa-

tient's charts were taken to the business office located in the basement of the Clinic and there all information was transferred by a secretary from the patient's dental charts to a charge card or insurance form. Insurance forms submitted to Pennsylvania Blue Shield were stamped with the treating surgeon's signature. Each of the surgeons had executed an authorization agreement accepting full responsibility for all statements, representations and certifications appearing on claims submitted to Pennsylvania Blue Shield to which his signature stamp had been affixed. Occasionally, the treating surgeon would send a personal note of appreciation to the forwarding dentist. Such notes bore the handwritten signature of the treating surgeon. The Appellant, Miller, "ran" the Clinic and was its sole administrative supervisor. The records of the Miller Clinic for the years which were the subject of the investigation were destroyed by a flood.

Blue Shield Medical/Surgical Agreements in effect for the period in question excluded coverage for oral surgical services related to the care or extraction of teeth other than fully or partially impacted teeth. Appellants were cited for submitting claims to Blue Shield for the removal of impacted teeth when, in fact, the Council found that the x-rays and other documents available to them indicated that the teeth extracted were not impacted. Appellant Snell was cited for four such cases, Hughes for two, and Lovette for six. At the time of the hearing an exhibit was submitted to the Council indicating that more than a hundred such discrepancies had been documented and that the specific cases submitted to the Council were only representative of that larger number. Although the exhibit was admitted over objection, the Council made no reference to it in its findings of fact or conclusions.

APPEALS OF DRS. SNELL, HUGHES AND LOVETTE

Appellants contend that the Council erred when it received into evidence, over objection, the report from the Blue Shield investigators disclosing 130 alleged discrepancies at the Clinic. Appellants do admit, as they must, that there is no reference to that report in the findings, conclusions or discussion by the Council. Appellants argued to the Council and to this Court that the 13 claims examined by the Council were almost insignificant compared to the vast number of cases processed by the Clinic. The exhibit was offered into evidence in anticipation that just such an argument would be made and to indicate to the Council that the 13 cases that they were hearing were merely representative of much wrongdoing at the Clinic.

It is well established that administrative agencies and boards are not held to strict compliance with the rules of evidence. *Walker v. Unemployment Compensation Board of Review*, 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976). However, the report was clearly hearsay and should have been excluded in view of the strenuous objections made to its admission. Nevertheless, we hold that the error was harmless in light of the fact that that report was not used to support any findings by the Council. *Walker v. Unemployment Compensation Board of Review, supra*. The record here is clear that the Council considered only the 13 cases actually submitted to and heard by it.

Appellants contend that there is a lack of substantial evidence to prove that the claims were incorrect in fact. While there may be room for reasonable minds to differ as to what is or is not an impacted tooth, the Council is composed of professional people judging their peers and we are well satisfied that their

findings were based upon credible testimony by competent witnesses and that that testimony, together with the numerous exhibits received, was sufficient to convince a reasonable mind to a reasonable degree of certainty that claims were submitted by the Clinic to Blue Shield for the extraction of teeth which were not impacted. *State Board of Osteopathic Examiners v. Berberian,* 200 Pa. Superior Ct. 533, 190 A.2d 330 (1963).

Appellants then argue that if there were false claims submitted, they were the responsibility of clerical help. There is nothing in the record of this case to support such a conclusion. To the contrary, the evidence is that the clerical help simply transferred to claim forms the information given to them by the surgeons. Moreover, the argument seems almost ludicrous in view of the fact that the Appellants assumed full responsibility for all information submitted over their signature stamps to Blue Shield.

Next, Appellants contend that by virtue of the office procedures that we have outlined above, they should not be charged with knowledge of the false claims. Fraud is proved by showing false representations made knowingly or recklessly. *Warren Balderston Co. v. Integrity Trust Co.,* 314 Pa. 58, 170 A. 282 (1934). We are of the opinion that the practice at the Clinic indicates reckless ignorance of the falsity of the claims and that there is sufficient evidence, albeit circumstantial, to support a finding that the Appellants had actual knowledge of the falsity of the claims. Additionally, there is dictum in *Shane v. Hoffman,* 227 Pa. Superior Ct. 176, 324 A.2d 532 (1974), to the effect that fraud may be proved by false representations regardless of actual knowledge or reckless ignorance where a duty to know the falsity is imposed by special circumstances. In our opinion, dentists who submit claims for compensation for oral

surgery with their signature stamps of approval upon them are acting in "special circumstances." Not only are they in the best position to know the truth or falsity of the information submitted, but they are also the experts upon whom an insurance company must rely for a determination that a claim is covered by insurance. An insurer cannot be expected to maintain a surveillance over those submitting claims to ascertain their accuracy.

Appellants argue that there is no evidence that any of them knowingly or with fraudulent intent or bad faith made a false claim, nor was there evidence from which such intent or knowledge could be inferred. We have already held that the Appellants are responsible for the submission of false claims by reason of their actual knowledge, reckless ignorance or because of their special circumstances. The necessary consequence of the submission of these false claims was the defrauding of Blue Shield. Where the necessary consequence of an act is to defraud, it is no defense that the actor had no intention to cheat or defraud. *Anderson v. Snyder*, 14 Pa. Superior Ct. 424 (1900).

Appellants raise the question of the commingling of the prosecutorial and judicial function of the Council. A similar argument was rejected in *State Dental Council & Examining Board v. Pollock*, 457 Pa. 264, 318 A.2d 910 (1974). We have reviewed the record in this case with care and find no evidence that the two functions were commingled in violation of Appellants' constitutional rights.

Appellants contend that this is not a proper case for the Council since the complainant is an insurance company which has other remedies available to it. Appellants argue that such a case should be tried in the criminal courts where they would be fully pro-

tected by a jury trial and adequate instructions from a trial judge. They cite *Pennsylvania State Board of Medical Education and Licensure v. Ferry,* 63 Dauph. 243 (1952) and *State Board of Osteopathic Examiners v. Berberian, supra,* in support of their position that the Council has no authority to suspend the license of a practicing dentist where no patient-doctor relationship is involved. We find nothing in either case which so holds. We feel that the following language by Judge MENCER in *State Dental Council and Examining Board v. Friedman,* 27 Pa. Commonwealth Ct. 546, 550, 367 A.2d 363, 366 (1976), is pertinent:

> However, we are not here dealing with a civil suit to enforce individual rights. Rather, we are dealing with an administrative agency of the sovereign which seeks to carry out its duty to protect the citizens of the Commonwealth by regulating the conduct of its licensees. It is the interests of many rather than the interests of few which impels the Board.

In the case now before us, Council was not dealing with unprofessional conduct alone but rather with fraudulent practices and fraudulent, misleading or deceptive representations. Certainly, every Pennsylvania citizen who is a subscriber to Pennsylvania Blue Shield benefits has an interest which must be protected by the Council under the authority of the Law.

In summary, we hold that the Council's finding that false claims were submitted to Blue Shield by the Miller Clinic is supported by substantial evidence in the record, that the Appellants Snell, Hughes and Lovette are chargeable under the law with knowledge of the false claims and that the requisite fraudulent intent may be inferred from the evidence with respect to each of those Appellants.

APPEAL OF DR. MILLER

As we have previously noted, the Appellant, Miller, was cited solely by reason of his ownership of and supervisory and administrative duties with respect to the Clinic. There is no evidence that Miller's name appeared on any of the claims submitted to Blue Shield. Miller testified that he "ran" the business. He employed the administrative personnel and signed the checks. One of the employees who was with the Clinic during the period from 1969 through 1971 is now an employee of the newly-formed professional corporation operating under the name of Miller Oral Surgery. That employee was not called to testify. Miller could not remember the names of any of the other employees who worked in the business office.

In its discussion of the evidence the Council said that it was "unconvinced" by the testimony of Miller and his associates that none of them had any connection with the claims submitted to Blue Shield, and that they were "unwilling to accept as true" that the cases in question represented mere clerical error. They held that, since Miller was solely responsible for the administration of the Clinic, he knew of and sanctioned the submission of false claims to Blue Shield.

It is true, as counsel for Appellants has argued, that Miller cannot be penalized under the law on any doctrine of respondeat superior. In order to hold Miller accountable under the law, the same principles must apply to him as to the other Appellants. A person cannot be held liable for fraudulent misrepresentations unless he made that representation himself or authorized another to make it for him or in some way participated therein. *Auto Transit Co. v. Koch,* 71 Pa. Superior Ct. 171 (1919). If it appears that one authorized or ratified another's misrepresentations, he may, however, be held liable for those misrepresenta-

tions. *Gilkeson v. Snyder,* 8 Watts & Serg. 200 (1844). Although it is a very close case, we have considerable difficulty in finding sufficient evidence in the record that Miller knew or should have known that false claims were being submitted to Blue Shield or that he participated in any way in the fraudulent conduct. While he may have benefited from the fruits of the fraud, unless he knew of it and participated in it, he cannot be guilty of fraudulent or unlawful practices or fraudulent misleading or deceptive representations.

## Conclusion

We affirm the Council as to its findings and conclusions with respect to the Appellants Snell, Hughes and Lovette. We reverse the Council with respect to its findings and conclusions concerning the Appellant Miller. We are of the opinion that the penalties imposed by the Council are within the Council's discretion as long as those penalties are reasonable under the circumstances. Accordingly, we affirm the Council's orders with respect to Appellants Snell, Hughes and Lovette.

## Order

And Now, this 11th day of January, 1979, that part of the order of the State Dental Council and Examining Board, dated May 9, 1977, suspending the licenses of Doctors Thomas R. Snell, Charles M. Hughes and Daniel K. Lovette for three months, is affirmed. That part of the Council's order suspending the license of Dr. Richard Miller is vacated.

---

Concurring and Dissenting Opinion by Judge Blatt:

I concur with the majority opinion insofar as it affirms the suspensions of Drs. Snell, Hughes, and

Lovette; but I cannot agree with the reversal as to the suspension of Dr. Miller.

The Council's finding of fact number 105 clearly stated that "[r]espondent Miller was in sole administrative control of the Miller clinic," and this control is amply established by the evidence. When this finding and evidence are considered along with the other findings and evidence as to the fraudulent practices characteristic of the clinic, I find it impossible to believe that Dr. Miller did not know of and sanction the false claims which the majority finds to justify the suspensions of the other dentists concerned.

It seems to me that as a licensed professional and as the sole administrator and proprietor of the clinic, Dr. Miller knew or should have known that these false claims were being submitted to Blue Shield and that his license was therefore properly suspended.