William P. Catena, M.D., Petitioner *v.* Commonwealth of Pennsylvania, State Board of Medical Education and Licensure, Respondent.

Argued December 7, 1979, before Judges CRUM-
LISH, JR., MENCER and MACPHAIL, sitting as a panel of
three.

*Paul H. Titus*, with him *Linda H. Jones* and *John
M. Burkhoff*, of *Titus and Marcus*, for petitioner.

*Pamela J. Arnold*, with her *William C. Kennedy*,
Assistant Attorney General, and *Edward G. Beister,
Jr.*, Attorney General, for respondent.

OPINION BY JUDGE MACPHAIL, February 29, 1980:
William P. Catena, M.D. (Petitioner) appeals an
order of the State Board of Medical Education and
Licensure (Board) suspending his license to practice
medicine for six months and placing him on probation
with conditions for a period of three years.

Petitioner was charged by the Board under Section
15 of the Medical Practice Act of 1974 (Act), Act of
July 20, 1974, P.L. 551, *as amended*, 63 P.S. §421.15,
based on two separate allegations of misconduct.

First, Petitioner was convicted and sentenced in federal court for knowingly presenting to an agency of the federal government claims for reimbursement under Medicare for medical services supplied, which claims were false, fictitious and fraudulent.[1] Second, Petitioner treated two Pennsylvania State Troopers, who were working as undercover narcotics agents, for weight control. During the course of treatment, Petitioner prescribed quantities of Schedule II drugs[2] designed to suppress their appetites, but failed to conduct adequate physical examinations, monitor the treatment, or maintain proper medical records for them.

The hearing examiner found that the conviction for Medicare fraud constituted a violation of Sections 15(a)(2)[3] and 15(a)(8)[4] of the Act and that the inadequate care given the troopers constituted a violation of Section 15(a)(8). An order was entered suspending Petitioner's license for six months and placing him on probation for three years. By the terms of the probation, the Petitioner would be precluded from treat-

---

[1] 18 U.S.C. §287 (1970).

[2] The drugs prescribed included Preludin, Fastin and Statobex.

[3] Section 15(a)(2) of the Act provides as follows:

(a) The Board shall have authority to refuse, revoke or suspend the license of a physician for any or all of the following reasons:

. . . .

(2) Making misleading, deceptive, untrue or fraudulent representations in the practice of medicine; practicing fraud or deceit in obtaining a license to practice medicine and surgery; or making a false or deceptive biennial registration with the board.

[4] Subsection (8) of Section 15 provides as follows:

(8) Being guilty of immoral or unprofessional conduct. Unprofessional conduct shall include any departure from, or the failure to conform to, the standards of acceptable and prevailing medical practice, in which proceeding actual injury to a patient need not be established.

ing patients for obesity or cosmetic weight loss. Upon Petitioner's application for review, the Board affirmed the hearing examiner's order on February 14, 1979. This appeal followed.

Petitioner argues before this Court that (1) conviction for Medicare fraud does not constitute a misleading, deceptive, untrue or fraudulent representation in violation of Section 15(a)(2) of the Act, nor does it establish unprofessional conduct in violation of Section 15(a)(8) of the Act, (2) the discipline imposed by the Board as a result of the findings based on Medicare fraud is so harsh in light of Petitioner's medical competence and attainment as to be an abuse of discretion, and (3) the finding of a violation of Section 15(a)(8) of the Act based on the treatment of the troopers is not supported by substantial evidence.

## Section 15(a)(2)

Petitioner argues first, that although fraud in billing *patients* would be within Section 15(a)(2), fraud in billing a third party payor is outside the doctor-patient relationship and, therefore, outside the practice of medicine as defined in Section 15(a)(2).

While Petitioner admits that billing patients is included within the scope of "practice of medicine," there are no Pennsylvania cases that so hold. Other jurisdictions, however, have determined that submission of fraudulent bills constitutes fraud in the practice of medicine. *Matanky v. Board of Medical Examiners,* 79 Cal. App. 3d 293, 144 Cal. Rptr. 826 (1978); *Kaplan v. Department of Registration and Education,* 46 Ill. App. 3d 968, 361 N.E.2d 626 (1977); *Wassermann v. Board of Regents,* 11 N.Y.2d 173, 182 N.E.2d 264, 227 N.Y.S.2d 649 (1962). We also note that this Court stated in *State Dental Council and Examining Board v. Friedman,* 27 Pa. Commonwealth Ct. 546, 367 A.2d 363 (1976) that Section 3(i) of The Dental Law,

Act of May 1, 1933, P.L. 216, *as amended,* 63 P.S. §122 (i), empowered the State Dental Board to maintain the standards of the dental profession, which standards deal with "all aspects of professional conduct." *Id.* at 551, 367 A.2d at 366. In view of the similarities between the two professions, it would be illogical to assume that the legislature intended for the standards relating to dentists to be more inclusive than those relating to physicians. We hold, therefore, that billing patients is within the scope of the term "practice of medicine" as used in Section 15(a)(2).

Petitioner urges, however, that when a physician bills a third party payor the activity is outside the doctor-patient relationship and, therefore, outside the practice of medicine. Petitioner relies on cases decided under the prior law, which was contained at Section 12 of the Medical Practice Act of June 3, 1911, P.L. 639, *as amended, formerly* 63 P.S. §410, repealed by the Act of July 20, 1974, P.L. 551. That section provided, *inter alia,* that a license to practice medicine could be revoked for "grossly unethical conduct." Cases interpreting this phrase limited its application to " 'those breaches of the trust, confidence and reliance, necessarily attendant upon the intimate relationship of physician and patient, which amount to gross abuses of the standards of professional conduct generally recognized as essential to the proper practice of medicine and surgery.' " *Pennsylvania State Board of Medical Education and Licensure v. Ferry,* 172 Pa. Superior Ct. 372, 378, 94 A.2d 121, 124 (1953). *See also, State Board of Osteopathic Examiners of Pennsylvania v. Berberian,* 200 Pa. Superior Ct. 533, 190 A.2d 330 (1963).

Petitioner's reliance on these cases is misplaced. First, the former statute contained grounds for discipline other than "grossly unethical conduct," including "any form of pretense which might induce persons

to become a prey to professional exploitation." It is obvious that because other grounds for discipline existed in the law, the cases cited do not hold that a physician could *never* be disciplined for conduct outside the doctor-patient relationship. Therefore, a finding that fraudulent billing of a third party payor is within the scope of Section 15(a)(2) would not be inconsistent with the cases cited.

Second, it seems clear to us that billing third party payors is within the doctor-patient relationship when a patient becomes the tool of a physician's fraud. The mere substitution of victims does not take the activity outside the scope of Section 15(a)(2). If Petitioner's logic were to be accepted, a doctor could not be disciplined for fraud in billing a child's parents for services rendered to the child because the parents are outside the doctor-patient relationship. Such a result is patently absurd and Petitioner's argument must be rejected.

We conclude that Petitioner's narrow reading of the phrase "practice of medicine" is not supported by the former statute or the cases decided thereunder, nor is it in accord with a fair reading of Section 15(a) (2) and the Board's duty to protect the citizens of this Commonwealth. *Friedman, supra* at 550, 367 A.2d at 366. *See also, Miller v. State Dental Council and Examining Board,* 39 Pa. Commonwealth Ct. 613, 396 A.2d 83 (1979).

### Conviction of Misdemeanor

Petitioner argues next that since the legislature provided in Section 15(a)(3) for suspension of a license based on a felony conviction, a suspension based on a lesser offense must be supported by more evidence than the bare fact of a conviction. We do not accept this proposition and see no need for further evidence where, as here, the elements of the misdemeanor

for which the Petitioner was convicted constitute a violation of Section 15(a)(2) per se.

## Section 15(a)(8)

Petitioner argues that Medicare fraud does not constitute unprofessional conduct as defined in Section 15(a)(8). We agree.

The Act is penal in nature and must be strictly construed. *Schireson v. Shafer,* 354 Pa. 458, 47 A.2d 665 (1946). Section 15(a)(8) defines unprofessional conduct to "include any departure from, or the failure to conform to, the standards of acceptable and prevailing medical practice, in which proceeding actual injury to a patient need not be established."

It is obvious that in Section 15(a)(8) the legislature is speaking of medical practice in a more limited sense than in Section 15(a)(2). Section 15(a)(8) is concerned with competence in the art of healing and, in contrast with Section 15(a)(2), seems limited to the doctor-patient relationship. Subsection (a)(8) is the only subsection in Section 15 that relates to competence and is clearly not meant to be a catch-all phrase.

In finding that Medicare fraud constitutes a violation of Section 15(a)(8), the hearing examiner relied on *Wassermann, supra,* which is a New York case. The New York statute expressly leaves definition of the term "unprofessional conduct" to the Board of Regents. N.Y. Education Law §6509(9) (Consol.). The term is much more open ended as used in that statute and the statute has a separate subsection dealing with professional competence. N.Y. Education Law §6509(2) (Consol.).

The hearing examiner also relies on *Friedman, supra.* While we agree, as noted above, that the standards enunciated in Section 15 deal with all aspects of professional conduct, we do not hold that each subsection does so.

As we have also noted, the legislature defined the term "unprofessional conduct" in subsection (a)(8). We can neither ignore nor expand upon that definition. We do not attempt here to identify what unprofessional conduct would be in all situations, but we do hold that Medicare fraud is not within the scope of Section 15(a)(8).

### Board's Discretion

Petitioner argues that any discipline based on the conviction for Medicare fraud is an abuse of the Board's discretion because such a small sum of money was involved and there is no evidence of fraudulent intent. We find absolutely no merit in these contentions.

Fraud is no less fraud because a small amount of money is involved. With regard to the requisite element of intent, the hearing examiner resolved the conflicting testimony in favor of the Board. Our review of the record reveals substantial evidence to support the hearing examiner's conclusion affirmed by the Board on the matter of intent.

Our scope of review is limited to a determination of whether constitutional rights were violated, and whether the adjudication is in accordance with law and supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

The convictions for Medicare fraud are substantial evidence of a violation of Section 15(a)(2) and the Board is empowered by Section 15(b) to impose discipline for such violations. We conclude that the fact that discipline was imposed here on the basis of Medicare fraud in no way constitutes an abuse of discretion by the Board.

### Section 15(a)(8)

Petitioner's final contention is that the finding that Petitioner's treatment of two Pennsylvania State

Troopers constituted a violation of Section 15(a)(8) is not supported by substantial evidence because no standard of acceptable and prevailing medical practice was established.

A careful review of the record discloses that, in addition to the testimony of Dr. MacDonald, a specialist in internal medicine who appeared on behalf of the Commonwealth, the standard medical practice was also enunciated in the testimony of Dr. William B. Catena, Jr., who testified on behalf of the Petitioner. There is ample evidence in the record from which the fact-finder could conclude that the treatment given the troopers was more than inadequate. It was completely unacceptable because it failed to conform to the standards of prevailing medical practice established by the competent testimony in the case. The records kept on the two men were entered into evidence and speak for themselves. The finding of a violation of Section 15 (a)(8) is supported by substantial evidence. *Berberian, supra.*

## Conclusion

There remains the question of whether the case must be remanded to the Board for reconsideration of the penalties imposed in light of our conclusion that the Medicare fraud conviction is not a violation of subsection (a)(8) as found by the Board. It will be noted, of course, that we have left undisturbed the Board's conclusions that the Medicare fraud did violate subsection (a)(2) and that Petitioner's treatment of the two troopers violated subsection (a)(8). It is true that subsection (b)(3) of Section 15 gives to the Board the discretion to revoke, suspend, limit or otherwise restrict the license as it shall determine. Nevertheless, we are of the opinion that the penalties imposed by the Board would be warranted by the two violations which we have affirmed.

ORDER

AND Now, this 29th day of February, 1980, the order of the State Board of Medical Education and Licensure, dated February 14, 1979, suspending the license of William P. Catena, M.D., No. 19845L, for a period of six months and placing him on probation for three years thereafter during which probationary period (1) his practice would exclude the treatment of patients for obesity or cosmetic weight loss and (2) he would file quarterly reports with the Board which will verify that he keeps adequate written social and medical histories of his patients and that he has an adequate record keeping system for recording the dates and times of his examinations and consultations with patients and the resulting diagnoses and treatments, if any, is affirmed.

This decision was reached prior to the death of President Judge BOWMAN.

Judge DISALLE did not participate in the decision in this case.

---

CONCURRING OPINION BY JUDGE MENCER:

Although I agree with the result reached, I do not agree with the conclusion that Medicare fraud does not constitute unprofessional conduct under Section 15(a)(8) of the Medical Practice Act of 1974, Act of July 20, 1974, P.L. 551, *as amended*, 63 P.S. §421.15(a)(8), which reads as follows:

(a) The board shall have authority to refuse, revoke, or suspend the license of a physician for any or all of the following reasons:

. . . .

(8) Being guilty of immoral or unprofessional conduct. Unprofessional conduct shall include any departure from, or the failure to conform to, the standards of acceptable and pre-

vailing medical practice, in which proceeding actual injury to a patient need not be established.

The majority interprets this language to apply only to conduct that affects a doctor's medical competence to practice. Such a conclusion seems to me to be incorrect for the following reasons:

First, it overlooks the use, in Section 15(a)(8), of the word "immoral" which illustrates that unprofessional conduct embraces more than mere medical incompetence. Fraud is clearly immoral conduct.

Second, the definition of unprofessional conduct states that such conduct shall *include* certain acts. This indicates that the definition is not inclusive but encompasses acts outside those listed in the definition. In order to support the majority's narrow construction, the phrase would have to be changed to read "shall mean".

Third, even if one limits unprofessional conduct to a departure from the standards of acceptable medical practice, I would hardly classify Medicare fraud as acceptable practice. The practice of medicine certainly encompasses more than mere technical skill.

I would conclude that Medicare fraud is clearly unprofessional conduct of the highest order.