William P. Flickinger, D.C., Petitioner *v.* Commonwealth of Pennsylvania, Department of State et al., Respondents.

Argued May 9, 1983, before Judges ROGERS, BLATT and DOYLE, sitting as a panel of three.

*Bradley Krosnoff,* with him *Arthur A. Kusic, Kusic and Lappas, P.C.,* for petitioner.

*Kenneth E. Brody,* with him *Michael J. McCaney, Jr.,* Assistant Counsel, and *David F. Phifer,* Chief Counsel, for respondents.

OPINION BY JUDGE ROGERS, June 15, 1983:

The petitioner, a chiropractor, has petitioned us to review the revocation of his professional license by the State Board of Chiropractic Examiners (Board) under Section 16(4) of the Chiropractic Registration Act of 1951, Act of August 10, 1951, P.L. 1182, *as amended,* 63 P.S. §616(4) which provides:

The board, by a majority vote thereof, may refuse to grant and may suspend or revoke a license or a registration to any applicant for the following reasons:

. . . .

(4) Gross incompetency, negligence or misconduct in carrying on of such profession.

The petitioner was charged with committing "gross misconduct in carrying on his profession by sexually harassing his fellow employees and those employed by him as well as taking sexual liberties with his patients, some of whom were children, and his staff, through a repeated and continued course of conduct."

The petitioner was licensed as a chiropractor in 1959. On July 5, 1978, he began working at the Herd Chiropractic Clinic in Camp Hill, Pennsylvania. A complaint was filed with the Commissioner of Professional and Occupational Affairs by another chiropractor at Herd describing incidents involving the petitioner and his patients and other Herd employees occurring in the fall of 1978 and early 1979. Other persons, both employees and patients, also filed complaints against the petitioner making similar allegations.

As noted, the Board after hearings revoked the petitioner's license.

The petitioner presents four issues: 1) whether the Board's findings of fact are supported by substantial evidence; 2) whether the Board improperly admitted into evidence and relied on the testimony of staff employees concerning events outside of the doctor-patient relationship; 3) whether the Board was biased, resulting in a denial of a fair hearing; and, 4) whether the petitioner's conduct constituted gross incompetency, negligence or misconduct in the carrying on of his profession.

A careful review of the record reveals that the Board's conclusion that the petitioner committed acts of gross misconduct is based on 97 findings of facts concerning the petitioner's conduct which we will not detail because it is distressingly unattractive. The

findings are supported by the testimony of the female co-workers and of patients, some of them minors.

The persons who appeared as witnesses for the petitioner testified only that he was in their opinion a competent chiropractor. The appellant did not testify because criminal charges were pending against him. We have held in this regard that:

[T]here [is nothing] inherently repugnant to due process in requiring the doctor to choose between giving testimony at the disciplinary hearing, a course that may help criminal prosecutors, and keeping silent, a course that may lead to the loss of his license.

*Herberg v. State Board of Medical Education and Licensure,* 65 Pa. Commonwealth Ct. 358, 362, 442 A.2d 411, 413 (1982) (quoting Arthurs v. Stern, 560 F.2d 477, 478-79 (1st Cir. 1977), *cert. denied,* 434 U.S. 1034 (1978)).

The petitioner next argues that gross misconduct in the carrying on of the chiropractic profession does not include conduct outside of the doctor-patient relationship and that the Board therefore erred in admitting into evidence and relying on testimony of other employees of the Herd clinic concerning his sexual harassment of them. He relies on *Catena v. State Board of Medical Education and Licensure,* 49 Pa. Commonwealth Ct. 542, 411 A.2d 869 (1980) and *State Board of Osteopathic Examiners of Pennsylvania v. Berberian,* 200 Pa. Superior Ct. 533, 190 A.2d 330 (1963). In *Catena,* we held that the term "unprofessional conduct" in Section 15(a)(8) of the Medical Practice Act of 1974, Act of July 20, 1974, P.L. 551, *as amended,* 63 P.S. §421.15(a)(8) was limited to conduct within the doctor-patient relationship solely because of specific limiting language in Section 15(a)(8), *id.* at 548, 411 A.2d at 872, which stated:

> Unprofessional conduct shall include any departure from, or the failure to conform to, the standards of acceptable and prevailing medical practice, in which proceeding actual injury to a patient need not be established.

There is no such limiting language in Section 16(4) of the Chiropractic Registration Act. Moreover, in *Catena,* we also held that the term "practice of medicine" in Section 15(a)(2) of the Medical Practice Act of 1974, where there was no limiting language, did include conduct outside of the doctor-patient relationship specifically, fraud in the billing of a third-party payor by a physician. *Id.* at 547, 411 A.2d at 871.

In *Berberian,* the Superior Court held that the term "unethical conduct" in Section 14 of the Act of March 19, 1909, P.L. 46, *as amended,* 63 P.S. §271 was limited to the doctor-patient relationship. The court in *Berberian* relied on the earlier case of *Pennsylvania State Board of Medical Education and Licensure v. Ferry,* 172 Pa. Superior Ct. 372, 94 A.2d 121 (1953) which held that the phrase "grossly unethical practice":

> includes . . . "those breaches of the trust, confidence and reliance, necessarily attendant upon the intimate relationship of physician and patient, which amount to gross abuses of the standards of professional conduct generally recognized as essential to the practice of medicine and surgery". . . .

*Ferry,* 172 Pa. Superior Ct. at 378, 94 A.2d at 124. The court in *Ferry,* by holding that "grossly unethical practice" *includes* acts within the doctor-patient relationship, indicated that the definition is not inclusive, but encompasses acts outside those listed in the definition.

We conclude that the petitioner's narrow reading of the phrase "gross . . . misconduct in carrying on of

such profession" is not supported by cases he cited, that it is not required by Section 16(4) and that it would interfere with the Board's duty to protect the citizens of the Commonwealth. *Catena,* 49 Pa. Commonwealth Ct. at 547, 411 A.2d at 871.

The petitioner next argues that the Board was biased and that he did not have a fair hearing because the Board refused to delay its adjudication so that he could testify after his criminal trial. There is no requirement that the Board delay its adjudication until after the criminal proceedings:

> Given the strong public interest in promptly disciplining errant physicians taken as a class, we see no reason to hold that the board was or could be constitutionally required to stay its proceedings until the criminal prosecutions against any particular doctor were over.

*Arthurs v. Stern,* 560 F.2d 477, 480 (1st Cir. 1977), *cert. denied,* 434 U.S. 1034 (1978). *See also Herberg v. Pennsylvania State Board of Medical Education and Licensure,* 65 Pa. Commonwealth Ct. 358, 362, 442 A.2d 411, 413 (1982).

The petitioner also contends that the testimony given by staff employees should have been disregarded because these persons never complained of his behavior at the time and continued to work with him for almost a year before filing complaints. The petitioner relies on *State Board of Medical Education and Licensure v. Grumbles,* 22 Pa. Commonwealth Ct. 74, 347 A.2d 782 (1975) for the proposition that the lapse of time between alleged offenses and complaints by the victim required that the testimony of the appellant's fellow workers be disregarded. In *Grumbles* a witness whose testimony we found to lack substance not only failed to complain of an alleged act of perversion until seven years later but continued to be the alleged perpetrator's friend and patient. *Id.* at 81, 347

A.2d at 786. Here, the staff employees testified that the events took place in late 1978; that they complained to the head of the Herd clinic in late 1978; and that they filed complaints with the Bureau of Professional and Occupational Affairs in the fall of 1979. It is true that an unreasonable delay in filing a complaint may support an inference against the sincerity of a witness, *see Commonwealth v. Krick,* 164 Pa. Superior Ct. 516, 522, 67 A.2d 746, 750 (1949); but the delay of one year between incident and formal complaint under these circumstances was not unreasonable.

Order affirmed.

ORDER

AND Now, this 15th day of June, 1983, the order of the State Board of Chiropractic Examiners revoking the license of William P. Flickinger, D.C., is affirmed.