■ In the Matter of MEHRDAD SANANDAJI, Petitioner, v THOMAS SOBOL, as Commissioner of Education of the State of New York, Respondent.—Casey, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510-a [4]) to review a determination of respondent which, *inter alia,* suspended petitioner's license to practice medicine in New York for one year.

The charges of professional misconduct against petitioner stem from his submission of insurance claims in which he represented that he had conducted "consultations" with nine patients whom he had neither seen nor examined. Despite the absence of personal interviews and physical examinations, petitioner explained the nature of each patient's illness and represented that he had reached a specific diagnosis. These diagnoses were based on identical tests performed on each patient by technicians employed by a business known as Health Scanners, which petitioner joined in 1984 by answering its advertisement in the New York Times. Health Scanners provided management and billing services to physicians who interpreted the results of diagnostic tests performed by technicians on chiropractic patients. The purpose of the tests was to ensure that the patient did not have a condition that required medical care rather than chiropractic care without the necessity of a medical examination by a physician, which protected the chiropractor from losing a patient.

Health Scanners provided a questionnaire to the patient and the information on the questionnaire, as well as the results of the tests, were forwarded to petitioner for interpretation and preparation of a written report, which was then sent to the patient. If a condition was disclosed that required medical treatment, the patient was advised to seek such treatment. ·

The billing practices of Health Scanners to Medicare and private insurance companies were handled by a specialist hired for that purpose. The billing could not and did not indicate that direct personal contact between physician and

patient had occurred. If less than two diagnostic tests were performed, the billing was for a "consult and history". If two or more tests were involved, reimbursement would be for an "extended consultation" as well. Petitioner was assured by representatives of Health Scanners that these practices were legal. When petitioner reviewed the data compiled on the nine patients involved here, he represented that the patients had, *inter alia,* blurred vision, hypertension, palpatations, hyperglycemia, angina and osteoporosis, and received reimbursement for the services rendered from the insurance companies. Petitioner then paid a management fee to Health Scanners.

At the hearing, a physician, specializing in internal medicine, testified after reviewing the records of the nine patients involved that "history" in medicine refers to a personal interview by a physician; "consultation" means a meeting between physician and patient; a "diagnosis" could be properly formulated only after a proper "history" and "consultation"; and diagnostic tests were performed to confirm or eliminate conditions suspected by a proper diagnosis and should not serve as a substitute for "consultation". Following receipt of this evidence, the Hearing Committee recommended that all charges be dismissed. The Commissioner of Health rejected this recommendation and made additional findings of fact. The Commissioner of Health concluded that petitioner was guilty of fraud with respect to representations made on these insurance forms and negligence with respect to the nine patients. The Commissioner of Health recommended that petitioner's license be suspended for two years, but that execution be stayed and that he be required to perform 100 hours of public service. The Regents Review Committee adopted these findings, but modified the penalty to a stayed one-year suspension and 50 hours of public service. The Board of Regents adopted the findings and recommendations of its Review Committee and directed respondent to issue an appropriate order. Petitioner challenges the determination in this CPLR article 78 proceeding.

Respondent, in his findings of fact, found that petitioner knowingly billed insurance companies for histories and consultations that he had not performed in regard to the nine patients herein, and submitted diagnoses knowing that he had not performed the necessary procedures to arrive at such diagnoses. Petitioner does not deny having done this. These acts permit an inference of guilty knowledge and intent as a factual determination *(see, Matter of D'Alois v Allen,* 31 AD2d 983, *appeal dismissed* 25 NY2d 908) and, therefore, substantial

evidence supports the determination that petitioner fraudulently practiced the profession of medicine *(see, Matter of Wassermann v Board of Regents,* 11 NY2d 173, 178, *cert denied* 371 US 861). Although it should be noted that no patient was ever deceived, injured or improperly billed by petitioner for services not rendered *(see, Matter of Paul v Sobol,* 159 AD2d 839), and neither Medicare nor any insurance company claim that it was defrauded, judicial inquiry ends when substantial evidence supports the administrative determination, as it does here *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222), and the determination must be confirmed. The lack of actual injury does not require a contrary result *(see, Matter of Mussalli v Board of Regents,* 159 AD2d 746).

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Kane, Casey, Mikoll and Yesawich, Jr., JJ., concur.